IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL SMITH,

                Plaintiff,

      v.

SHERIFF GEORGE MCCLENDON,
THE CITY OF PHILADELPHIA, and
UNNAMED PHILADELPHIA SHERIFFS,

                Defendants.

CIVIL ACTION
No. 14-6358

## OPINION

**Slomsky, J.**                                                                 **May 4, 2015**

## I.    INTRODUCTION

Plaintiff Michael Smith was escorted out of the Criminal Justice Center in Philadelphia when he was attending jury duty. Plaintiff suffers from Complex Regional Pain Syndrome, a disability that affects his central nervous system and requires the use of a metal pump inserted in his stomach. In this case, Plaintiff claims that because of his disability he was forced to leave the Criminal Justice Center and was not permitted to serve as a prospective juror.

Plaintiff initiated this action on November 5, 2014 by filing a Complaint alleging claims under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act. Defendants are the City of Philadelphia, Deputy Sheriff George McClendon, and unnamed deputy sheriffs. Defendants have filed a Motion to Dismiss the Complaint, which is before the Court for a decision.

## II.    BACKGROUND

On June 6, 2013, Plaintiff went to the Criminal Justice Center (the "CJC") in Philadelphia for jury duty. (Doc. No. 1 ¶ 7.) Plaintiff suffers from Complex Regional Pain Syndrome

1

("CRPS") which affects the central nervous system. (Doc. No. 1 ¶ 8.) Plaintiff treats his CRPS with a metal pump which is located in his stomach. (Id.) Because of the presence of the implanted pump, Plaintiff carries a card which contains information about the medical device. Upon entering the CJC, Plaintiff presented the medical device card to deputy sheriffs in the lobby of the CJC. (Id. ¶ 9.) After some "initial confusion" regarding his medical card, Plaintiff was allowed to proceed to the jury room. (Id.)

At 10:15 a.m., the jury pool was excused for a break. Plaintiff informed the deputy sheriffs in the lobby that he was leaving the building and would again need assistance getting through security due to his metal pump. (Doc. No. 1 ¶ 10.) When Plaintiff returned from lunch, he was removed from the line by Defendant George McClendon. (Id. ¶ 11.) Plaintiff alleges that McClendon told Plaintiff "you're not getting back in the building." Plaintiff, who was displaying a juror sticker, responded to McClendon that he needed to reenter the CJC for jury duty. (Id. ¶¶ 11, 12.)

After Plaintiff told McClendon that he was a juror, McClendon called a woman named Tanya who was in charge of the jury room. (Doc. No. 1 ¶ 13.) Tanya met with Plaintiff in the lobby of the CJC and escorted him back to the jury room. (Id.) Plaintiff claims that while walking with Tanya, she told him that the deputy sheriffs were "frequently not accommodating of individuals with special needs regarding accessibility." (Id.)

Later that day, after Plaintiff was assigned a room number and a judge, the jurors were excused for lunch. (Doc. No. 1 ¶ 14.) Plaintiff returned from lunch at 1:00 p.m. (Id. ¶ 15.) When Plaintiff returned, he stood in the security line until a deputy sheriff told Plaintiff he would not be permitted to reenter the CJC. (Id.) Plaintiff again showed his medical card to the deputy sheriffs, but the deputy sheriffs "refused to look at the card." (Id.) Finally, Plaintiff lifted his

shirt to show the deputy sheriffs that Plaintiff had an internal device protruding through the skin of his stomach.  (Id.)  Defendant McClendon approached and told Plaintiff to "get out of the building."  (Id. ¶ 16.)  Plaintiff once again explained that he was at the CJC for jury duty.  (Id. ¶ 17.)

Plaintiff did not exit the building and various deputy sheriffs approached him and said that he would be arrested if he did not leave.  (Doc. No. 1 ¶ 17.)  Plaintiff then called the Philadelphia Police Department and informed them that the deputy sheriffs were attempting to remove him from the CJC.  (Id. ¶ 18.)  Helen Holsworth, a CJC employee involved with jury selection, also told Plaintiff that he would be arrested if he did not leave the CJC.  (Id. ¶ 19.)  The deputy sheriffs then escorted Plaintiff outside.  (Id. ¶ 20.)

While outside the CJC, Ms. Holsworth called the jury commissioner, Daniel Rendine. (Doc. No. 1 ¶ 21.)  Ms. Holsworth apparently told Plaintiff that Mr. Rendine called the deputy sheriffs "a bunch of yahoos."  (Id.)  According to Plaintiff, Mr. Rendine then offered to take Plaintiff off the jury service list permanently.  (Id.)  Plaintiff declined, explaining to Ms. Holsworth that "he valued the civic duty associated with jury service."  (Id.)

Following the incident on June 6, 2013, Plaintiff filed a complaint against the deputy sheriffs with the Internal Affairs Division ("IAD").[1]  (Doc. No. 1 ¶ 22.)  Deputy Brown, an IAD Sheriff Deputy, interviewed Plaintiff at his home.  (Id.)  He identified the Defendant deputy sheriffs from a series of photographs.  (Id.)  According to Plaintiff, the IAD investigation was expected to be completed by April 2014, but Plaintiff has not received any update since the interview despite his telephone calls seeking information.  (Id.)

---

[1]  In the Complaint, Plaintiff does not identify the name of the agency in which he filed the IAD complaint, but it appears from subsequent events that it was the IAD of the Philadelphia Sheriff's Department.

On November 5, 2014, Plaintiff filed a Complaint against the City of Philadelphia, Sheriff George McClendon, and the four unknown deputy sheriffs alleging the following claims: (1) an unreasonable seizure in violation of his Fourth Amendment rights pursuant to 42 U.S.C. § 1983; (2) a violation of his substantive due process rights under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983; (3) a violation of his equal protection rights under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983; (4) a Monell municipal liability claim against the City of Philadelphia pursuant to 42 U.S.C. § 1983; and (5) a discrimination claim under Title II of the Americans with Disabilities Act.[2]  (Doc. No. 1.)  On January 2, 2015, Defendants filed a Motion to Dismiss the Complaint.  (Doc. No. 4.)  On January 18, 2015, Plaintiff filed a Response.  (Doc. No. 5.)  For reasons that follow, Defendants' Motion to Dismiss will be granted in part and denied in part.

## III.    STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 231 n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[2] The Complaint lists only one count: an unreasonable seizure claim in violation of Plaintiff's Fourth Amendment rights pursuant to 42 U.S.C. § 1983.  (Doc No. 1 at 6.)  However, the first paragraph of Plaintiff's Complaint includes the additional claims described above.  (Id. ¶ 1.)

liable for the misconduct alleged."  Id.  Applying the principles of Iqbal and Twombly, the Third

Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part

analysis that a district court in this Circuit must conduct in evaluating whether allegations in a

complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a
> claim."  Second, the court should identify allegations that, "because they are no
> more than conclusions, are not entitled to the assumption of truth."  Finally,
> "where there are well-pleaded factual allegations, a court should assume their
> veracity and then determine whether they plausibly give rise to an entitlement for
> relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679).  "This means that our inquiry is normally broken

into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike

conclusory allegations, and then (3) looking at the well-pleaded components of the complaint

and evaluating whether all of the elements identified in part one of the inquiry are sufficiently

alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show"

such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir.

2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  Iqbal,

556 U.S. at 679.  The "plausibility" determination is a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense."  Id.

## IV.    ANALYSIS

### A.    Plaintiff's Claims Under 42 U.S.C. § 1983

Plaintiff brings the majority of his claims under the Civil Rights Act, 42 U.S.C. § 1983

which provides that "[e]very person who, under color of [state law], subjects, or causes to be

subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured" in an appropriate action.

Under 42 U.S.C. § 1983, Plaintiff alleges a violation of his Fourth Amendment right not to be subject to unreasonable seizures, a violation of his substantive due process and equal protection rights under the Fourteenth Amendment, and finally, a claim of municipal liability pursuant to the Supreme Court's decision in Monell v. Dep't of Social Services of the City of New York, 436 U.S. 658 (1978).  The Court will review each claim in turn.

> **1.     Plaintiff's § 1983 claims against Sheriff McClendon and unnamed deputy sheriffs will be dismissed**
>
> **a.     Plaintiff's Fourth Amendment claim**

Plaintiff first claims that he suffered an unreasonable seizure in violation of his Fourth Amendment rights when he was escorted out of the CJC.  (Doc. No. 1 ¶ 2.)  The Fourth Amendment prohibits "unreasonable seizures."  U.S. Const. amend. IV.  In order to state a claim for an unreasonable seizure under the Fourth Amendment, a plaintiff must show: (1) that a seizure occurred; and (2) that the seizure was unreasonable.  Ashton v. City of Uniontown, 459 F. App'x 185, 189 (3d Cir. 2012).

Plaintiff's claim fails because he was never seized for purposes of the Fourth Amendment.  The Supreme Court has held that an individual is "seized" under the Fourth Amendment when "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not *free to leave*."  United States v. Mendenhall, 446 U.S. 544, 554 (1980) (emphasis added).  In Sheppard v. Beerman, the court dealt with a situation where a law clerk was escorted out of a courthouse by court officers.  The law clerk had arrived in chambers and learned from court officers that the judge had fired him.  18 F.3d 147, 150 (2d

Cir. 1994).   The officers then escorted the law clerk from chambers to the outside of the courthouse.   Sheppard, 18 F.3d at 150.   The court held that under the Fourth Amendment the plaintiff had not been seized when he was escorted out of the courthouse because he was "free to go anywhere else that he desired" with the exception of the courthouse.   Id. at 153.

Here, like the plaintiff in Sheppard, Plaintiff was not "seized" under the Fourth Amendment, and thus his Fourth Amendment rights were not violated.   Plaintiff was asked to leave the courthouse by Defendant McClendon.   (Doc. No. 1 ¶ 16.)   Although when Plaintiff refused to leave Defendant Deputy Sheriffs told him that he would be arrested if he did not leave, Plaintiff was not arrested but merely escorted outside the courthouse.   (Id. ¶ 19.)   Plaintiff makes no allegations that he was touched in any way during this encounter.   Plaintiff was free to go wherever he wanted to go outside of the courthouse.   Given these circumstances, Plaintiff could not have reasonably believed that he was not free to leave.   Therefore, Plaintiff has failed to plausibly allege that he sustained a violation of his Fourth Amendment right against unreasonable seizure and this claim will be dismissed.

> **b.** **Plaintiff's two claims under the Fourteenth Amendment will be dismissed**

> **i.** **Substantive Due Process**

Plaintiff next claims that Defendants violated his substantive due process rights under the Fourteenth Amendment.   Substantive due process protects against "the exercise of power without any reasonable justification in the service of a legitimate governmental objective."   Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).   In order to establish a substantive due process violation, a plaintiff must show that: (1) an actor engaged in conduct under color of state law; (2) a deprivation of a protected liberty interest by that conduct occurred; and (3) the deprivation

shocks the conscience.  <u>Chainey v. Street</u>, 523 F.3d 200, 219 (3d Cir. 2008).  Only the most egregious conduct can satisfy the conscience-shocking prong.  <u>Id.</u>

The Third Circuit has held that a protected liberty interest for purposes of the substantive due process analysis is reserved to "the most intimate matters of family, privacy, and personal autonomy."  <u>Ambruster v. Cavanaugh</u>, 410 F. App'x 564, 567 (3d Cir. 2011); <u>see also</u> <u>Albright v. Oliver</u>, 510 U.S. 266, 272 (1994) ("The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity.").  Here, Plaintiff contends that he has a protected liberty interest in serving as a potential juror.  The Court cannot find any legal precedent for this claim, and Plaintiff fails to provide any such support.  However, even if the Court were to find as a matter of first impression that Plaintiff had a protected liberty interest in serving as a potential juror, his substantive due process claim would still fail because he has not alleged conduct that would "shock the conscience."

As noted above, only the most egregious conduct is considered conscience shocking.  In <u>Gottlieb ex rel. Calabria v. Laurel Highlands School District</u>, the Third Circuit examined whether a student could meet the conscience shocking prong when her teacher pushed her into a door.  272 F.3d 168, 172-73 (3d Cir. 2001).  In concluding that the teacher's behavior was not conscience shocking, the court reasoned that although the teacher had placed his hand on the plaintiff's shoulder and pushed him a few inches, this conduct was "so minor that even if [plaintiff was injured], it cannot be inferred . . . that [the teacher] intended to act malicious and sadistically so as to constitute a constitutional violation."  <u>Gottlieb</u>, 272 F.3d at 175.  Thus, the court concluded that the push did not shock the conscience because it was not "a brutal and

inhumane abuse of official power literally shocking to the conscience." <u>Id.</u> (citing <u>Hall v. Tawney</u>, 621 F.2d 607, 613 (4th Cir. 1980)).

Here, Plaintiff was not touched at all while he was escorted from the courthouse.  He was merely asked to leave the courthouse, and when he refused, he was escorted outside.  (Doc. No. 1 ¶ 20.)  At that point, he was free to go wherever he wanted to go.  Under these circumstances, the actions taken by the deputy sheriffs and Defendant McClendon simply do not rise to the level of conscience shocking behavior.  Thus, Plaintiff's substantive due process claim fails.

### ii.      Equal Protection

Plaintiff also alleges a violation of the equal protection clause of the Fourteenth Amendment based on the alleged discrimination that occurred because of his physical disability. The Fourteenth Amendment's Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1. Ordinarily, a plaintiff averring discrimination under § 1983 based on a violation of the equal protection clause must allege that a state actor intentionally discriminated against him because of his membership in a protected class.  <u>Shoemaker v. City of Lock Haven</u>, 906 F. Supp. 230, 238 (M.D. Pa. 1995).  However, the Supreme Court has identified that plaintiffs who are not members of a protected class may bring an equal protection claim under a theory of a "class of one."  <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000).

Here, Plaintiff's equal protection claim may only proceed on a class of one theory because he is not within the protected classes recognized for purposes of the equal protection clause.  These classes include those "based upon suspect distinctions, such as race, religion, and alienage, and those impacting fundamental rights."  <u>Trefelner ex rel. Trefelner v. Burrell Sch. Dist.</u>, 655 F. Supp. 2d 581, 589 (W.D. Pa. 2009).  Plaintiff brings his equal protection claim

based on his physical disability and the United States Supreme Court has held that physical disability is not a protected class. Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 366-67 (2001); see also Audi v. Jenkins, No. 3:12-CV-836, 2012 WL 3011704, at *4 (M.D. Pa. July 23, 2012) (agreeing with the proposition that a person alleging disability discrimination is not in a protected class under the equal protection clause). Thus, because Plaintiff brings his equal protection claim based on his disability, his equal protection claim must be analyzed under a "class of one" theory.

A plaintiff asserting a "class of one" claim must show that: (1) defendants, acting under color of state law, intentionally treated plaintiff differently from others similarly situated; and (2) that there was no rational basis for the treatment. Pressley v. Pa. Dep't. of Corrs., 365 F. App'x 329, 331-32 (3d Cir. 2010). In order to satisfy the first prong, a plaintiff must plausibly allege the existence of similarly situated individuals whom the defendant treated differently than the plaintiff. Perano v. Twp. of Tilden, 423 F. App'x 234, 238 (citing Startzell v. City of Phila., 533 F.3d 183, 203 (3d Cir. 2008)). In comparing the plaintiff with such similarly situated individuals, the individuals must be alike to plaintiff "in all relevant aspects." Id.

Where a plaintiff fails to sufficiently identify the existence of such similarly situated parties, the plaintiff's class of one claim will fail. In Perano, a mobile home park developer appealed the district court's dismissal of his class of one equal protection claim. 423 F. App'x at 235-36. There, the developer sued the Township after disputes arose concerning zoning and whether the developer had acquired a license to operate the mobile home park. Perano, 423 F. App'x at 236. In support of his class of one claim, the developer simply stated that he was treated differently from "other similarly situated residential and commercial developers." Id. at 238. In determining that plaintiff's class of one claim was properly dismissed, the Third Circuit

reasoned that "[w]ithout more specific factual allegations as to the allegedly similarly situated parties, [plaintiff] has not made plausible the conclusion that those parties exist and that they are like him in all relevant aspects." Id. at 238-39.

Here, like the developer in Perano, Plaintiff has failed to allege that similarly situated parties exist and that they are like Plaintiff in all relevant aspects.  In his Complaint, Plaintiff does not point to similarly situated parties, such as other prospective jurors or other individuals entering the CJC.  He also does not state that there were other individuals with medical cards or with physical disabilities that required the aid of a metal device who were permitted to enter the CJC while he was not.  The only "other" parties referred to in the Complaint are Defendants, two court employees who staffed the jury room—"Tanya" and a woman named Helen Holsworth—and jury commissioner Daniel Rendine.  (Doc. No. 1 ¶¶ 13, 19, 21.)  Like the developer in Perano, Plaintiff has failed to assert in the Complaint specific factual allegations as to the existence of similarly situated parties.  In this regard, "he has not made plausible the conclusions that those parties exist and that they are like him in all relevant respects."  Perano, 423 F. App'x 238-39.   Accordingly, Plaintiff has not plausibly established he was intentionally treated differently from other similarly situated parties.  Therefore, his equal protection claim will be dismissed.

> ### c.     Sheriff McClendon and unnamed Deputy Sheriffs are entitled to qualified immunity on Plaintiff's Fourth and Fourteenth Amendment claims

Even if Plaintiff had alleged facts to plausibly allege violations of his Fourth and Fourteenth Amendment rights, the individual sheriffs would be entitled to qualified immunity.  Qualified immunity applies so long as the officers' conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  United

Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa., 316 F.3d 392, 398 (3d Cir. 2003).  Thus, courts must analyze whether: (1) the plaintiff has alleged the deprivation of an actual constitutional right; and (2) whether the right was clearly established at the time of the alleged violation.  Id. at 398-99 (citing Saucier v. Katz, 533 U.S. 194, 200 (2001)).  Under the second prong, in order to show that a right is clearly established, a plaintiff must show "that every reasonable official would have understood that what he is doing violates that right."  Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012) (internal quotations omitted).  "In other words, existing precedent must have placed the statutory or constitutional question beyond debate."  Id.

In the instant case, Defendants Sheriffs McClendon and the unnamed deputy sheriffs are entitled to qualified immunity on Plaintiff's Fourth Amendment and Fourteenth Amendment claims.  The first prong of the qualified immunity analysis requires a plaintiff to set forth facts that allege the deprivation of an actual constitutional right.  Here, Plaintiff has not done so in the Complaint.  In the absence of a constitutional violation, the sheriffs are entitled to the protection of qualified immunity.

In addition, Plaintiff is unable to satisfy the second prong of the qualified immunity inquiry—that the right was clearly established at the time of the alleged violation for Plaintiff's Fourth Amendment claim and Plaintiff's substantive due process claim.  For purposes of this prong, courts examine whether "a reasonable official in the defendant's position at the relevant time could have believed, in light of clearly established law, that [his or her] conduct comported with established legal standards."  McLaughlin v. Watson, 271 F.3d 566, 571 (3d Cir. 2001).  Here, a reasonable deputy sheriff in Defendants' position would not have believed his conduct was unlawful.

12

With regard to the Fourth Amendment claim, there is no precedent that would lead the deputy sheriffs to believe that escorting Plaintiff out of the courthouse constituted an unreasonable seizure.  The individual Defendants never touched or detained Plaintiff, but merely instructed him to leave the CJC.  Thus, the deputy sheriffs were reasonable in believing that their actions were lawful when they escorted Plaintiff from the CJC.

Regarding Plaintiff's substantive due process claim under the Fourteenth Amendment, as noted above, the Court could not find any authority to support the proposition that Plaintiff has a protected liberty interest in serving as juror.  Plaintiff has not provided the Court with any authority on that point.  Because there is no existing precedent that recognizes a liberty interest in serving as a juror, the individual Defendants here would not have believed they violated clearly established law when they prevented Plaintiff from continuing with jury selection by escorting him out of the courthouse.  Thus, Plaintiff's substantive due process claim also fails because the Defendant deputy sheriffs would be protected by qualified immunity.  Accordingly, Defendants are cloaked with qualified immunity and for this additional reason, Plaintiff's Fourth and Fourteenth Amendment claims will be dismissed. [3]

---

[3] In their Motion to Dismiss, Defendants did not argue that the individual Defendants were entitled to qualified immunity on Plaintiff's equal protection claim.  However, as noted above, Plaintiff failed to plausibly allege that he sustained an equal protection violation, and thus, Defendants would be entitled to qualified immunity under the first prong of the qualified immunity requirements.  As a result, the Court will not discuss the second prong of qualified immunity—whether the right was clearly established at the time of the alleged violation—as it would apply to the equal protection claim.  See Constitutional Guided Walking Tours v. Independence Visitor Ctr. Corp., 454 F. App'x 118, 123 (3d Cir. 2011) (finding that appellants' "failure to satisfy the first prong of the qualified immunity analysis obviates the need to evaluate the second prong").

##### 2.     Plaintiff's <u>Monell</u> claim against the City of Philadelphia will be dismissed

Plaintiff next brings a claim of municipal liability against the City of Philadelphia.  To establish municipal liability under 42 U.S.C. § 1983 as interpreted by the United States Supreme Court's decision in <u>Monell</u>, a plaintiff must demonstrate that the municipality, through the implementation of a formal policy or a custom, caused the plaintiff's underlying constitutional violation.  <u>Monell v. Dep't of Soc. Servs. of City of N.Y.</u>, 436 U.S. 658, 694-95 (1978).  A plaintiff must "show that a policymaker is responsible either for the policy or, through acquiescence for the custom." <u>Andrew v. City of Phila.</u>, 895 F.2d 1469, 1480 (3d Cir. 1990).  A plaintiff must also establish a direct causal link between the identified policy or custom and the alleged constitutional violation.  <u>Collins v. City of Harker Heights, Tex.</u>, 503 U.S. 115, 123 (1992).  A complaint will be dismissed for failing to state a plausible claim under <u>Monell</u> if the plaintiff fails to specify the relevant policy or custom and simply paraphrases the elements of a <u>Monell</u> claim.  <u>See</u> <u>Wood v. Williams</u>, 568 F. App'x 100, 104 (3d Cir. 2014) (explaining that a plaintiff "simply paraphrasing § 1983 does not meet Rule 8's pleading requirements because it fails to satisfy the rigorous standards of culpability and causation required to state a claim for municipal liability") (internal quotations omitted)); <u>McTernan v. City of York, Pa.</u>, 564 F.3d 636, 658 (3d Cir. 2009).  Here, Plaintiff's <u>Monell</u> claim will be dismissed for the following two reasons.

First, in his Complaint, Plaintiff fails to plausibly allege that the City of Philadelphia had a policy or custom that caused his alleged constitutional violations.  In support of Plaintiff's claim of municipal liability against the City of Philadelphia, Plaintiff states the following in his Complaint:

>Plaintiff's adverse treatment is the result of policies, customs, omissions, and continuing indifference on the part of the City of Philadelphia and the City of Philadelphia [sic], through its agents, deprived Plaintiff of reasonable access to a public building because of Plaintiff's disability.  The City of Philadelphia is responsible for the harms suffered by failing to provide adequate training, by failing to censure Defendant Deputy Sheriffs, and by failing to provide Plaintiff with any feedback or assurances to assure Plaintiff that he does not suffer the same discriminatory treatment in the future at the CJC or other City of Philadelphia buildings.

(Doc. No. 1 ¶ 25.)

These allegations do not sufficiently identify a relevant policy or custom that caused a constitutional violation.  They do not include "specific allegations referencing the conduct, time, place, and persons responsible for any official municipal policy or custom" as required to survive a motion to dismiss.  Mason v. City of Phila., No. 13-cv-5163, 2014 WL 4722640, at *10 (E.D. Pa. Sept. 22, 2014).  In the Complaint, Plaintiff has merely recited the elements of a Monell claim and has failed to include any specific factual allegations about the relevant policy or custom.  See Wood, 568 F. App'x at 105 (dismissing plaintiff's municipal liability claim where plaintiff's complaint "did not allege facts showing any particular or specific policy or custom, or how it allowed the claimed constitutional violation to occur, identifying the policymaker or decisionmaker, or showing prior notice through a pattern of similar constitutional violations").

Second, as described above, Plaintiff has failed to plausibly allege that he sustained a constitutional violation under the Fourth and Fourteenth Amendments.  Thus, Plaintiff's Monell claim also fails because he cannot establish that the City of Philadelphia's policy or custom caused a constitutional violation.  For these two reasons, Plaintiff's Monell claim against the City of Philadelphia will also be dismissed.

**B.      Plaintiff's Claim Under Title II of the ADA Will Not Be Dismissed**

Plaintiff also alleges that Defendants violated Title II of the Americans with Disabilities Act (the "ADA").  In order to bring a claim under Title II of the ADA, Plaintiff must plausibly allege that: (1) he is a qualified individual with a disability; (2) he was excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.  Mutschler v. SCI Albion CHCA Health Care, 445 F. App'x 617, 621 (3d Cir. 2011) (citing 42 U.S.C. § 12132).  Defendants do not dispute that Plaintiff is a qualified individual with a disability or that he was excluded from participation in jury selection and forced to leave a public building.  Rather, Defendants contend that Plaintiff's claim fails because he has not plausibly alleged that he was removed from the courthouse because of his disability.  (Doc. No. 4 at 11.)

The court in McNamara v. Ohio Building Authority examined at the motion to dismiss stage whether a plaintiff had plausibly alleged that he was denied access to a public building because of his disability.  697 F. Supp. 2d 820 (N.D. Ohio 2010).  In McNamara, the plaintiff had multiple physical disabilities that necessitated the use of a Segway Personal Transporter for traveling even short distances.  McNamara, 697 F. Supp. 2d at 823.  The plaintiff brought a Title II claim under the ADA after he was denied access to a government building using his Segway. Id. at 824.  The plaintiff in McNamara arrived at a government building and explained to two state troopers and the building manager that he had an appointment with the Ohio Civil Rights Commission that necessitated the use of his Segway inside.  Id. at 824.  He was nevertheless refused access with the Segway.  Id.  After threatening legal action, plaintiff was permitted to park the Segway at the security desk and access the building in a wheelchair.  Id.  In holding that

plaintiff had plausibly alleged a Title II violation under the ADA, the court reasoned that the building manager had been rude, had forced plaintiff to discuss his disability publicly, and plaintiff was offered no assistance when he was refused access with the Segway.  Considering all these facts, the court concluded that plaintiff had sufficiently pled that he was denied access to the building because of his disability and thus his claim under Title II of the ADA could survive a motion to dismiss.

Here, Plaintiff has also plausibly alleged that he was forced to leave the CJC and not permitted to serve as a potential juror because of his disability.  Like the plaintiff in McNamara, Plaintiff here was not permitted to enter the building because of the device he used to accommodate his disability.  Even though Plaintiff showed the deputy sheriffs his medical card, displayed a juror sticker, eventually pulled up his shirt to display the metal pump protruding from his stomach, and finally had the sheriffs confirm with court staff that Plaintiff was properly there to serve as a potential juror, Plaintiff was nevertheless persuaded to exit the building or face being arrested.  Examining these facts in the light most favorable to Plaintiff, he has plausibly alleged that he was denied access to the CJC and excluded from participation in jury duty because of his disability.  Thus, Defendants' Motion to Dismiss will be denied on Plaintiff's claim under the ADA.

## V.     CONCLUSION

For all the foregoing reasons, Defendants' Motion to Dismiss will be granted in part and denied in part.  Defendants' Motion will be granted with respect to Plaintiff's claims under 42 U.S.C. § 1983.  Defendants' Motion will be denied regarding his claim under Title II of the ADA.  An appropriate Order follows.